IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| KAIZAD P. SHROFF, | * | |
| Plaintiff, | * | |
| vs. | * | |
| SARAH M. KENDALL, *Chief, Immigrant Investor Program, United States Citizenship and Immigration Services*, KENNETH T. CUCCINELLI, *Senior Official Performing the Duties of the Director, United States Citizenship and Immigration Services,* and CHAD F. WOLF, *Acting Secretary, United States Department of Homeland Security*, | * * * * * * | CASE NO. 4:20-CV-78 (CDL) |
| Defendants. | * | |

O R D E R

United States Citizenship and Immigration Services ("USCIS") operates a program that issues visas to qualified aliens who establish that they have invested at least $1,000,000 in a new commercial entity that will create at least ten jobs in the United States. Plaintiff sought such a visa, but his petition was denied because USCIS found that he had failed to satisfy the $1,000,000 investment threshold. Plaintiff appeals that decision through the present action, which he filed pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* He maintains that USCIS's decision was arbitrary and capricious and unsupported by

substantial evidence. Both parties now move for judgment in their favor. Finding that USCIS misapplied the law in its decision regarding the amount that Plaintiff invested in the new enterprise, the Court overturns the denial and remands this matter to USCIS for further consideration consistent with this Order. The Court does not find that Plaintiff is necessarily entitled to the visa. The Court's ruling simply directs USCIS to reconsider its decision in light of applicable law as explained in this Order.

USCIS categorically excluded from consideration all investments made through a limited liability limited partnership in which Plaintiff was a general and limited partner with a 50% ownership interest and three limited liability companies in which that partnership was the sole member. As explained below, that portion of USCIS's decision was based on an error of law. If Plaintiff presented sufficient evidence that he invested at least $1,000,000 of his personal capital into the LLLP and LLCs and that they used that capital to invest into the new enterprise, then USCIS should not have automatically excluded the investments from consideration simply because the final checks were not written from Plaintiff's personal checkbook. In light of this remand, both pending motions for summary judgment (ECF Nos. 19 & 23) are terminated as moot.

ADMINISTRATIVE BACKGROUND

**I.   The EB-5 Visa Program**

In 1990, Congress amended the Immigration and Nationality Act ("INA") to create a new program for immigrants to obtain visas by investing in entities to create jobs in the United States.  *See* Immigr. Act of 1990, Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978 (1990) (codified at 8 U.S.C. § 1153(b)(5)).  The INA provides that "[v]isas shall be made available . . . to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise [("NCE")] . . . in which such alien has invested . . . or, is actively in the process of investing, capital in an amount not less than the amount specified in subparagraph (C), and [] which will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States[.]"  8 U.S.C. § 1153(b)(5)(A).  In 2017, the time of Plaintiff's initial petition, the requisite amount that Plaintiff had to invest under this program was $1,000,000.  *Id.* § 1153(b)(5)(C).

Such visa petitions are called "EB-5 immigrant petitions."  8 C.F.R. § 204.6(a).  The former Immigration and Naturalization Service ("INS") published regulations interpreting the EB-5 statute and established procedures for immigrants to file I-526

3

forms to obtain EB-5 visas.  These regulations define capital to mean "cash, equipment, inventory, other tangible property, cash equivalents, and indebtedness secured by assets owned by the alien investor, provided that the alien investor is personally and primarily liable and that the assets of the new commercial enterprise upon which the petition is based are not used to secure any of the indebtedness."  *Id.* § 204.6(e).  "Invest means to contribute capital.  A contribution of capital in exchange for a note, bond, convertible debt, obligation, or any other debt arrangement between the alien investor and the new commercial enterprise does not constitute a contribution of capital for the purposes of this part."  *Id.*  The regulations go on to explain what kinds of evidence a plaintiff may submit to support his petition.  *See id.* § 204.6(j).

## II.  Administrative Proceedings

Plaintiff, a citizen of India, filed his I-526 form seeking an EB-5 visa on October 27, 2017.  Immigrant Pet. by Alien Entrepreneur 1, 4 ECF No. 14-3 at 2, 5.  Plaintiff claimed the following investments in Rivertown Psychiatry, P.C.:

- $1,000 in exchange for 100 shares of Rivertown stock in 2012;
- $53,623 as a down payment for an office building located at 1520 22nd St., Columbus, Georgia through Smile Realty, LLC, a company that he co-owned with his wife, in 2014;
- $140,000 as a down payment for a second office building located at 5700 Veterans Parkway, Columbus, Georgia through Smile Realty in 2017;
- $39,173.99 to renovate the 5700 Veterans Parkway building in 2017;

4

- $175,000 to purchase an airplane for Rivertown in 2016; and
- $750,000 as a "cash investment."

Summ. of Invs. in a New Com. Enter. ¶¶ 1-5, ECF No. 14-4 at 7-8.

USCIS sent Plaintiff a "Request for Evidence" on January 15, 2019. Req. for Evidence 1 (Jan. 15, 2019), ECF No. 15-6. It explained that Plaintiff had not established that he was eligible for an EB-5 visa and that it needed more evidence to assess his eligibility. *Id.* It found several discrepancies in his petition, but its primary problem was that an entity called "Maneck LLLP"—not Plaintiff—had transferred the relevant funds either to Smile Realty, LLC or Rivertown itself. *Id.* at 5-6. It also took issue with the airplane, pointing out that Plaintiff had provided no evidence that he transferred ownership of the airplane to Rivertown or how it was going to be used for Rivertown's business activity. *Id.*

Plaintiff responded to USCIS's request. Resp. to Req. for Evidence 1 (Apr. 11, 2019), ECF No. 15-7 at 14. He explained that Maneck Family, LLLP was his "personal investment account." *Id.* at 2. He clarified that "Maneck Family[,] LLLP is an investment partnership" in which he and his wife were equally general partners and limited partners, that Maneck was the sole owner of Smile Realty, LLC, and that Plaintiff, as general partner, had wide discretion to "distribute funds from the partnership on behalf of himself to invest for his personal or business interests." *Id.* at

5

2-3. Pursuant to this discretion, Plaintiff directed Maneck "to distribute his share of the partnership's investment returns held in the Maneck Family[,] LLLP account directly to the NCE's account." *Id.*

He also indicated that Rivertown had a net income of $1,575,758.74 in 2017 and $2,255,777.18 in 2018 and that Rivertown had distributed its net income into his Maneck Family, LLLP account at his direction as the sole shareholder of Rivertown. *Id.* at 2. Specifically, he claimed that Rivertown had distributed as equity $550,000 to Maneck on February 3, 2017, $250,000 to Maneck on April 20, 2017, and $150,000 to Maneck on May 16, 2017, for a total of $950,000. *Id.* He then "invested his profits from Rivertown [] back into the company" by transferring "$750,000 from Maneck Family[,] LLP to Rivertown [] on October 24, 2017." Additionally, Plaintiff noted that he directed Maneck to distribute $140,000 of his partnership investment returns, which he legally owned, to Smile Realty to pay the down payment for the 5700 Veterans Parkway property and that he did the same with regard to the $39,173.99 for renovations at that property. *Id.* at 3. He submitted evidence that Rivertown owned the airplane and a statement explaining the business purpose of the airplane. *Id.* at 3-4.

Plaintiff also provided a copy of Maneck's partnership agreement. Maneck Family, LLLP Agreement of Ltd. P'ship, ECF No. 15-7 at 24. That agreement stated that Plaintiff and his wife

6

each held a one percent interest as a general partner and a 49 percent interest as a limited partner. *Id.* ¶ 9.1. The agreement further provided that the partnership would allocate income "in accordance with the Percentage Interests of the Partners." *Id.* § 9.2. And it provided that the general partners, "in their sole and absolute discretion," could distribute proceeds and working capital that remained after paying the partnership's debts and liabilities to third-party creditors and partners "among the Partners in the same manner as net income and loss" as provided by the agreement. *Id.* ¶ 10.1(a)-(c).

In June 2019, USCIS sent Plaintiff a "Notice of Intent to Deny," in which it again found that Plaintiff had not established that he was eligible for an EB-5 visa. Notice of Intent to Deny (June 11, 2019), ECF No. 16-4. USCIS took issue with the claimed renovations at 5700 Veterans Parkway because the evidence showed that Maneck had transferred $39,173.99 to Smile Realty to purchase property in Opelika, Alabama—not for renovations at the 5700 Veterans Parkway property as Plaintiff had previously claimed. *Id.* at 6. Regarding the claimed $750,000, USCIS noted that bank statements did show that Maneck had transferred that amount to Rivertown on October 24, 2017 "for its operational money for new offices." *Id.* But the same bank statements also showed that Rivertown transferred that exact amount back to Maneck six days later, on October 30, 2017, and that Maneck used the funds

7

transferred from Rivertown to pay various property taxes between October 30 and October 31.  *Id.*  Because of these deficiencies, USCIS determined that the evidence did not establish that Plaintiff had invested $1,000,000 into Rivertown.  USCIS also found that $1,000,000 was not sufficiently at risk because the airplane was not being used for business activity.  *Id.* at 8.

USCIS, however, gave Plaintiff one last chance to remedy these deficiencies, noting that he had "30 days from the date of this notice to submit additional information, evidence, or arguments to support the petition" and that it would consider such information, evidence, or arguments in making its decision.  *Id.* at 9. Plaintiff responded.  Resp. to Notice of Intent to Deny (July 11, 2019), ECF No. 16-4 at 11.  He contended that he invested $64,826.05 into the 5700 Veterans Parkway property for renovations and pest control.  Thus, in addition to the $140,000 down payment, Plaintiff claimed that he had invested a total of $204,826.05 into that property for Rivertown.  *Id.*

He also acknowledged that his initial claim of $39,173.99 for renovations was erroneous, but he explained that USCIS was correct that he used that amount to purchase property in Opelika and that the purchase should thus count towards the $1,000,000 threshold. *Id.* at 1-2.  Plaintiff also addressed the disputed $750,000; he clarified that Rivertown did in fact transfer $750,000 back to Maneck on October 30, 2017, but Maneck paid $100,000 for

Rivertown's withholding taxes on December 28, 2018 and $22,821.13 of Rivertown's real estate taxes in 2017, so those two investments should count towards the $1,000,000. *Id.*

Plaintiff added two new claimed investments in his response to the notice of intent to deny. First, he claimed that he funded the purchase of two buildings in Phenix City, Alabama, which together cost $424,606.88. *Id.* at 3. The first building housed east Alabama's largest psychiatry office, and Rivertown planned to acquire that practice. *Id.* The second building was to be used as Rivertown's Phenix City office. *Id.*

Second, Plaintiff claimed that he purchased a shopping center at 3846 St. Mary's Road in Columbus to open another Rivertown satellite office. *Id.* Plaintiff acknowledged that these were previously undisclosed investments, but he cited the USCIS policy manual, which provided that "[c]hanges that occur in accordance with a business plan and other supporting documents as filed will generally not be considered material" and "[i]f the new commercial enterprise undertakes the commercial activities presented in the initially filed business plan and creates the required number of jobs, the new commercial enterprise may further deploy the capital into another activity." *Id.* at 4. In other words, Plaintiff asserted that these changes were consistent with his previously disclosed business plans such that USCIS could properly consider them.

9

Regarding the airplane, Plaintiff admitted that it was not being used for travel between Rivertown's offices but asserted that Rivertown had plans to expand to other areas such that air travel would be a more efficient way to travel between offices. *Id.* at 6. Plaintiff thus claimed that he had invested a total of $1,445,524.93 into Rivertown. *Id.* at 5.

USCIS denied Plaintiff's petition on September 21, 2019. Decision (Sept. 21, 2019), ECF No. 16-5. It first determined that he had not provided sufficient evidence to show that he had invested or was actively in the process of investing $1,000,000. *Id.* at 5. Consistent with its prior communications to Plaintiff, USCIS explained that most of the investments claimed by him were actually made by Maneck Family, LLLP, Smile Realty, LLC, Riverchase Realty, LLC, and Holly Hills Shopping Center, LLC. *Id.* at 9-11. For example, USCIS found that the LLCs purchased all of the properties claimed as investments by Plaintiff and that Plaintiff did not use "funds derived from his personal assets" to make those purchases. *Id.* at 8-11. USCIS did not address Plaintiff's ownership interest in Maneck or Maneck's relationship to any of the LLCs, although it did acknowledge that Maneck transferred money to the LLCs to fund some of the property purchases. Despite this acknowledgement, USCIS nevertheless found that Plaintiff himself had not invested $1,000,000 into Rivertown. USCIS also found that Rivertown's business plans did not mention further expansion, so

the $175,000 airplane was not available to Rivertown, and thus it could not count towards the $1,000,000.  *Id.* at 13.  For these reasons, USCIS denied Plaintiff's petition.

DISCUSSION

"Under the APA, an agency action, finding, or conclusion can be set aside where it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or is 'unsupported by substantial evidence.'"  *Mendoza v. Sec'y, Dep't of Homeland Sec.*, 851 F.3d 1348, 1352 (11th Cir. 2017) (per curiam) (quoting 5 U.S.C. § 706(2)(A), (E)).  "This standard is 'exceedingly deferential.'"  *Id.* at 1352-53 (quoting *Defs. of Wildlife v. U.S. Dep't of Navy*, 733 F.3d 1106, 1115 (11th Cir. 2013)).

"To determine whether the agency's action was arbitrary and capricious, [courts] examine whether the agency came to a rational conclusion and do not substitute [the court's] own judgment for that of the agency."  *Id.* at 1353.  Courts should only "set aside an agency action as arbitrary and capricious . . . where (1) the agency 'relied on factors which Congress has not intended it to consider,' (2) the agency 'failed to consider an important aspect of the problem,' (3) the agency explained its decision in a way 'that runs counter to the evidence,' or (4) the action 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Id.* (quoting *Defs. of*

11

*Wildlife*, 733 F.3d at 1115). "The 'substantial evidence' standard is 'no more than a recitation of the application of the 'arbitrary and capricious' standard to factual findings.'" *Id.* (quoting *Fields v. U.S. Dep't of Labor Admin. Rev. Bd.*, 173 F.3d 811, 813 (11th Cir. 1999) (per curiam)). "A reviewing court may not supply a reasoned basis for the agency's action that the agency has not provided, although the court may uphold an agency decision if the agency's path to the decision may be reasonably determined." *Wright v. Everson*, 543 F.3d 649, 654 (11th Cir. 2008); *but see Fla. Dep't of Lab. & Emp. Sec. v. U.S. Dep't of Lab.*, 893 F.2d 1319, 1322 (11th Cir. 1990) ("An important corollary to the general rule that courts will not substitute their views for the discretionary decisions of an agency on matters of policy is the recognition that reviewing courts do have the authority and responsibility to correct errors of law made by the agency.").

Under this standard of review, the Court must therefore decide whether USCIS's determination that Plaintiff did not invest $1,000,000 into Rivertown was rational. USCIS does not cite any evidence disputing that the LLLP and LLCs collectively invested more than $1,000,000 into Rivertown. Nor does it cite any evidence disputing that, under their partnership agreement, Plaintiff and his wife were equally general and limited partners such that Plaintiff had an ownership interest in half the funds in the LLLP and had the discretion to direct the LLLP to invest those funds

directly into Rivertown or transfer funds into the LLCs to invest in Rivertown. USCIS also fails to direct the Court to any evidence challenging the fact that the LLLP alone owned the three LLCs such that the LLLP owned and controlled the funds in the LLC accounts.

Although USCIS does not dispute that Plaintiff owned and controlled the LLLP and LLCs or that those entities invested at least $1,000,000 into Rivertown, it maintains that, because the *entities*, rather than Plaintiff personally, did the investing, it correctly ignored those investments in determining whether Plaintiff's petition met the $1,000,000 threshold. The narrow issue that the Court must decide is whether the statute and regulations authorize USCIS to categorically exclude from consideration investments made through the LLLP and LLCs owned and controlled by a petitioner even if the investments otherwise comply with the statutory and regulatory requirements and there is no dispute that the entities invested petitioner's capital.[1]

---

[1] Even if petitioners could invest their lawfully obtained funds through their wholly owned artificial entities, USCIS also contends that its decision was nevertheless rational because Plaintiff relied on investments made after filing his initial petition. According to USCIS, these new investments were impermissible material changes to his petition. While it is true that Plaintiff's final response to USCIS included new claimed investments from 2018 that occurred after his 2017 petition filing date, USCIS misunderstands the Court's narrow role in reviewing its decision. The Court's role is not to consider the grounds upon which USCIS *could* have denied Plaintiff's petition; rather, its role is to review the grounds upon which USCIS actually relied. *See Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (noting that "a simple but fundamental rule of administrative law" is "that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.

The applicable statutory provision states that "[v]isas shall be made available . . . to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise . . . in which such alien has invested" $1,000,000. 8 U.S.C. § 1153(b)(5)(A)(i). The question is, what does the phrase "such alien has invested" mean? USCIS thinks it means that an alien must *directly* invest his personal capital into the NCE. A simple example of such a direct investment would be an alien writing a check out of his personal bank account for $1,000,000. But business is typically more complicated than that. Every day entrepreneurs make new investments in the United States economy and create jobs using various forms of business ownership. Ignoring this reality when interpreting the statute results in a strained interpretation of the text.

The applicable regulations, although not dispositive, suggest that the INS understood this reality. The regulations define

---

If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency."); *Fla. Dep't of Labor & Emp. Sec'y*, 893 F.2d at 1321 ("As a general rule in administrative law cases, a reviewing court may not affirm an agency decision on grounds not addressed by the agency, but, rather, will remand for the agency to address the issue in the first instance."). Here, USCIS addressed investments made after Plaintiff's initial petition, including investments made in 2018, during the administrative process. Nowhere in its decision did it deny Plaintiff's petition because he relied on impermissible material changes to his petition. As such, the Court does not consider whether USCIS could have denied Plaintiff's petition based on impermissible material changes.

"[c]apital" as "cash, equipment, inventory, other tangible property, cash equivalents, and indebtedness secured by assets owned by the alien investor, provided that the alien investor is personally and primarily liable and that the assets of the new commercial enterprise upon which the petition is based are not used to secure any of the indebtedness. . . . Assets acquired, directly or indirectly, by unlawful means (such as criminal activities) shall not be considered capital for the purposes . . . of the Act." 8 C.F.R. § 204.6(e). "Invest means to contribute capital. A contribution of capital in exchange for a note, bond, convertible debt, obligation, or any other debt arrangement between the alien investor and the new commercial enterprise does not constitute a contribution of capital for the purposes of this part." *Id.* The regulations continue their emphasis on the contribution of new capital to the enterprise, not simply a rearranging of obligations: "A petition submitted for classification as an alien entrepreneur must be accompanied by evidence that the alien has invested or is actively in the process of investing lawfully obtained capital in a new commercial enterprise in the United States which will create full-time positions for not fewer than 10 qualifying employees." 8 C.F.R. § 204.6(j). The petition can include "[e]vidence of assets which have been purchased for use in the United States enterprise, including invoices, sales receipts, and purchase contracts

15

containing sufficient information to identify such assets, their purchase costs, date of purchase, and purchasing entity." 8 C.F.R. § 204.6(j)(2)(ii).

The regulations clearly prohibit a petitioner from claiming a contribution based on indebtedness that the petitioner is not personally and primarily liable for, indebtedness secured by the NCE's assets, or any capital contributed in exchange for a debt arrangement with the NCE. And they obviously prohibit claiming investments of unlawfully obtained capital. But the regulations do not include a prohibition against investing lawfully obtained funds through business entities that are owned and controlled by the petitioner. USCIS identifies no statutory or regulatory provision that prohibits a petitioner from using these vehicles to invest in the NCE. If the INS had wanted to prohibit an alien from using an LLLP or LLC to meet the threshold investment requirement, it could have easily done so. The fact that it did not is telling. *See, e.g.*, *Johnson v. White*, 989 F.3d 913, 918 (11th Cir. 2021) (quoting *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017)) (noting that "the inclusion of 'one item of [an] associated group or series excludes another left unmentioned"); *Zhang v. United States Citizenship & Immigr. Servs.*, 978 F.3d 1314, 1320 (D.C. Cir. 2020) ("By including this single limitation on how the investor may acquire capital, the regulation implicitly excludes other limitations.").

16

The regulations actually support the conclusion that investments by LLLPs and LLCs should be considered. They allow a petitioner to submit "sufficient information to identify . . . [the] *purchasing entity*" regarding "assets which have been purchased for use in the" NCE. 8 C.F.R. § 204.6(j)(2)(ii) (emphasis added). This language suggests that assets purchased by an "entity"—and not the alien in his personal capacity—can be claimed as investments as long as the investment otherwise complies with the regulations. The key is whether the investment into the NCE is substantively new capital from the petitioner, not whether the check for the capital was drawn on the petitioner's personal bank account or whether the purchase agreement shows that petitioner personally purchased property for the NCE.

For example, if an alien used an LLC of which he was the sole member to start a new enterprise and transferred $1,000,000 of his personal assets into that LLC, the fact that the LLC took that money and made the capital investment purchases would not change the fact that the alien made a contribution of $1,000,000 of his personal capital toward the new enterprise. To disregard the investment automatically because the final checks for the office building or the desks and chairs were drawn on the LLC account instead of his personal account would be to place form over substance. Similarly, if the alien used capital from his share in a partnership to make an investment, the Court does not read the

17

regulations to prohibit USCIS from considering that capital as an investment as long as it can be traced back to the alien's funds in the partnership.

## CONCLUSION

It appears to the Court that, for claimed investments totaling more than $1,000,000, USCIS took a simplistic approach and disregarded investments that flowed from Plaintiff's LLLP and LLCs regardless of whether the capital in those entities came from Plaintiff personally.[2]  The Court finds that the automatic disregard of that capital in determining whether Plaintiff satisfied the $1,000,000 threshold was contrary to the statute and the regulations.  Accordingly, USCIS's decision to deny the visa under these circumstances was not in accordance with the law, and its denial must be set aside.  The Court, however, is not convinced that Plaintiff has established that he has met the threshold investment requirement even under the Court's standard stated above.  Rather than make that determination *de novo*, the Court remands the matter back to USCIS for it to reconsider its denial

---

[2] The Court notes that USCIS took issue with some claimed investments for other reasons.  USCIS, however, does not rely on or even address those reasons in its briefing in this action.  It is therefore not clear to the Court that USCIS would have denied Plaintiff's petition even if it had considered investments made through the LLLP and LLCs because of those other, unaddressed reasons.  Rather than analyze these reasons *de novo*, the Court determines that the proper course of action is to remand to USCIS for reconsideration.

consistent with today's order.[3]  All pending motions in this action shall be terminated as moot by the Clerk.

    IT IS SO ORDERED, this 6th day of August, 2021

                                        S/Clay D. Land
                                        CLAY D. LAND
                                        U.S. DISTRICT COURT JUDGE
                                        MIDDLE DISTRICT OF GEORGIA

---

[3] The Court is a bit perplexed as to why Plaintiff cannot clearly demonstrate to USCIS how personal funds in excess of $1,000,000 flowed from his personal assets through the LLLP and LLCs and into the new enterprise if that is in fact what occurred.  It is Plaintiff's burden to demonstrate that he satisfies the requirements for the visa.  USCIS is not required to dig through records to make his case for him.  The purpose of this remand is a narrow one.  USCIS should determine whether investments of capital meeting the threshold requirement were made by Plaintiff from his personal assets even if those funds were invested in the new enterprise through Plaintiff's LLLP and LLCs, and if USCIS determines that they were, whether he is otherwise entitled to his visa.